# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| JACOB SIMPSON,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER ALLEN, WARDEN STANLEY WILLIAMS, COMMISSIONER HOMER BRYSON, GEORGIA DEPARTMENT OF CORRECTIONS, GEORGIA STATE PRISON,<br><br>    Defendants. | CIVIL ACTION NO.: 6:15-cv-118 |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. (Doc. 1.) For the numerous reasons set forth below, Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Consequently, I **RECOMMEND** that the Court **DISMISS** this action **WITHOUT PREJUDICE**, **DENY** Plaintiff's Motion to Consolidate, (doc. 15), and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND

Plaintiff filed this action on October 7, 2015, contesting a litany of conditions of his confinement at Georgia State Prison. (Doc. 1.) Plaintiff's allegations include having been slammed to the ground by a correctional officer on July 30, 2015. (Id. at p. 5.) Plaintiff states that he has not received meals and showers on some dates in June, July, and September 2015. Id.

He further alleges that another inmate has thrown feces at his cell door. Id. He also took issue with the food he has been served at Georgia State Prison. Id. at p. 6.

Plaintiff filed an Amended Complaint on November 20, 2015. (Doc. 8.) In this Amended Complaint, Plaintiff reasserted many of the same claims that he had asserted in his original Complaint. (Id. at pp. 6–8.) Plaintiff also reiterated his requests that, among other things, he be awarded $50,000,000 in damages, that Defendants transfer him to a different facility, and that the Court "expose this case on national television and the media." (Id. at p. 5.)

Plaintiff filed both his original Complaint and Amended Complaint on forms that asked Plaintiff what steps he had taken to pursue his claims through the appropriate grievance process. In his original Complaint, Plaintiff stated that he had filed a grievance on October 1, 2015, and "nothing has been done yet." (Doc. 1, p. 3.) In his Amended Complaint, Plaintiff stated that he had written a grievance and "the grievance counselor and the Warden[,] Mr. Stanley[,] has [sic] refused to reply to my grievance." (Doc. 8, p. 3.) Plaintiff attached to his Amended Complaint a receipt whereby the grievance counselor acknowledged receiving Plaintiff's grievance on November 2, 2015. (Id. at p. 9.)

Plaintiff filed a Motion on January 13, 2016. (Doc. 15.) Therein, Plaintiff once again reiterated some of the allegations raised in his original Complaint. He also attached a copy of the grievance he filed on November 2, 2015. (Id. at p. 5.) Plaintiff asked that a case he recently filed in this District, Case No. 6:15-cv-147, be transferred to the Brunswick Division because the instant case was already pending there. However, Plaintiff is mistaken. That lawsuit, like this lawsuit, is properly pending in the Statesboro Division of this District. However, construing Plaintiff's Motion broadly, the Clerk docketed it as a Motion to Consolidate Cases.

**STANDARD OF REVIEW**

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that

standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.     Dismissal for Failure to Exhaust Administrative Remedies**

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that a prisoner exhaust his remedies "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted that exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Johnson v. Meadows, 418 F.3d 1152, 1157–59 (11th Cir. 2005) (stating "unless the prisoner completes the administrative process . . . exhaustion has not occurred"); Sewell v. Ramsey, No. CV406-159,

2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies)

Within the Georgia Department of Corrections, the grievance procedure is a two-step process. See Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015), *report and recommendation adopted*, No. CV 614-048, 2015 WL 5025478 (S.D. Ga. Aug. 24, 2015) (citing Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05–0001). The process commences with the filing of a grievance, which must be filed within ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. Id. The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. Id. An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. Id. The Commissioner has 100 calendar days after receipt to render a decision. These time limits may be waived for good cause. Id.

Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones, 549 U.S. at 216. However, the normal pleading rules still apply, and when an affirmative defense appears on the face of a complaint making it clear that a prisoner cannot state a claim for relief, dismissal is

warranted under the screening process set out in 28 U.S.C. § 1915A. Id. at 214–15. Thus, when a prisoner admits in his complaint that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241 at * 1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

It is apparent from the face of Plaintiff's Complaint that he did not exhaust his available administrative remedies prior to the filing of this lawsuit. Plaintiff signed his Complaint on October 3, 2015, (doc. 1, p. 8), and it was filed in this Court on October 7, 2015. In his Complaint, Plaintiff admitted that he had only filed his grievance on October 1, 2015, and that nothing had yet happened on it. (Id. at p. 3.) If Plaintiff filed his grievance on October 1, 2015, the forty day time period for the warden to respond had clearly not run when he signed his Complaint two days later. Consequently, Plaintiff did not exhaust the first step, much less the second step, of the Georgia Department of Corrections grievance process before bringing his claims to this Court. Moreover, as Plaintiff's claims arose in July of 2015, and he states that he waited until October of 2015 to file his grievance, it appears he did not meet the requirement to begin the grievance process within ten calendar days from the date he knew, or should have known, of the facts giving rise to the grievance.

The face of Plaintiff's Amended Complaint, which essentially asserts the same claims as his original Complaint, further evidences that he did not exhaust his administrative remedies. As an initial matter, if Plaintiff exhausted his administrative remedies after filing this action, that would not remedy his failure to exhaust before filing suit. Exhaustion of administrative remedies

is a "precondition" to filing an action in federal court, and therefore, an inmate must complete the administrative process before initiating a lawsuit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir.2000); see also McDaniel v. Crosby, 194 F. App'x 610, 613 (11th Cir. 2006) ("To the extent [plaintiff] relies upon the grievances and appeals he submitted after filing his initial complaint, such grievances and appeals cannot be used to support his claim that he exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of his suit, and, thus, must have occurred before the suit was filed.") Additionally, Plaintiff attached a receipt to his Amended Complaint that evidences that he did not initiate the grievance process until November 2, 2015, nearly a month after Plaintiff filed this suit. (Doc. 8, p. 9.) Additionally, the forty day time period for the warden to respond to this grievance had not run by the date of the Amended Complaint. The Amended Complaint further reveals that Plaintiff did not comply with the requirement that he file a grievance within ten days of the date he knew, or should have known, of the facts giving rise to the grievance. He clearly knew of the facts giving rise to the grievance well before November 2, 2015, because he had filed this lawsuit nearly a month before that date.

Likewise, Plaintiff's Motion to Consolidate, (doc. 15), further reveals that he did not exhaust his administrative remedies before filing this lawsuit. That Motion includes a copy of the grievance that Plaintiff filed on November 2, 2015. (Id. at p. 5.) Moreover, the relief that Plaintiff seeks in that case, the transfer of Case No. 6:15-cv-147 from the Savannah Division, is moot because that case, like this case, is already properly filed in the Court's Statesboro Division, the Division wherein Georgia State Prison is located. Additionally, even if the Motion is construed as a request to consolidate the two cases, that request should be denied, as

consolidation would be futile since Plaintiff did not exhaust his administrative remedies before filing this lawsuit.

For all of these reasons, Plaintiff's Complaint and Amended Complaint readily reveal that he failed to exhaust his administrative remedies before filing this lawsuit. Consequently, the Court should **DISMISS** this action **WITHOUT PREJUDICE**, and **DENY** Plaintiff's Motion to Consolidate, (doc. 15).

## II.   Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[1] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[1] A certificate of appealability is not required in this Section 1983 action.

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** this action **WITHOUT PREJUDICE** for failure to exhaust administrative remedies, **DENY** Plaintiff's Motion to Consolidate, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** that any party seeking to object to this Report and Recommendation file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 15th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA