JACOB SIMPSON,

        Plaintiff,

        v.

STEPHEN ALLEN,

        Defendant.

CIVIL ACTION NO.: 6:15-cv-118

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff is currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia. He filed this cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement at GSP. After the requisite frivolity review, Plaintiff's Complaint was served on Defendant Stephen Allen, a correctional officer at GSP. (Doc. 19.)[1] Defendant then filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint. (Doc. 21.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS** Plaintiff's Complaint, **without prejudice**. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis* and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed this action, pursuant to 42 U.S.C. § 1983, on October 7, 2015. (Doc. 1.) Plaintiff contends that Defendant Allen, a correctional officer at GSP, slammed him to the

---

[1] The Clerk of Court is **DIRECTED** to update the name of Defendant Officer Allen to "Stephen Allen", the name provided by Defendant in his Motion to Dismiss.

ground on July 30, 2015. (Id. at p. 5.) According to Plaintiff, this use of force was unprovoked and occurred while Plaintiff's hands were cuffed behind his back. In addition to his allegations regarding this use of force, Plaintiff's allegations challenged a litany of the conditions of his confinement at GSP. (Id. at pp. 5–8.) Plaintiff stated that he had not received meals and showers on some dates in June, July, and September 2015. Id. He further alleged that another inmate had thrown feces at his cell door. Id. He also took issue with the food he was served at GSP. Id. at p. 6. Plaintiff filed several pleadings, including an Amended Complaint, in which he expounded upon these allegations. (Docs. 8, 13, 14.)

On January 15, 2016, I conducted a frivolity review of Plaintiff's Complaint, as amended, pursuant to 28 U.S.C. § 1915A. (Doc. 16.) I concluded that the Court should dismiss Plaintiff's Complaint because Plaintiff failed to exhaust his administrative remedies. (Id. at pp. 4–9.) The Report and Recommendation noted that Plaintiff asserted in his Complaint that the prison's grievance counselor had only received his grievance days before Plaintiff filed this action. Id. Further, Plaintiff admitted that the grievance was still pending. Id. In addition, I noted that Plaintiff's Amended Complaint and Motion to Consolidate included a grievance and a receipt indicating that Plaintiff did not commence the grievance process until November 2015. (Id. at pp. 8–9.) Accordingly, I concluded that Plaintiff's own pleadings evidenced that he did not properly exhaust the Georgia Department of Corrections' grievance process before filing this suit. (Id. at p. 9.)

In his Objections to the Report and Recommendation, Plaintiff asserted, for the first time, that he filed a grievance on August 1, 2015, the day after Defendant Allen slammed him to the ground. (Doc. 18, p. 1.) Plaintiff alleged that the dorm counselor who was responsible for signing the grievance and submitting it to the grievance counselor never showed up to work until

2

sometime in September.  Id.  Plaintiff contended that the dorm counselor then put the grievance

into the system, and Plaintiff never received a response.  Id.  Plaintiff further argued that he

wrote the Warden and the Commissioner of the Georgia Department of Corrections about his

grievance but received no response.  Id.

District Judge J. Randal Hall reviewed the Report and Recommendations and Plaintiff's

Objections.  Given the new allegations in Plaintiff's Objections, Judge Hall held that that the

Court "cannot conclusively determine that Plaintiff did not exhaust his administrative remedies

as to his excessive force claims against Defendant Allen." (Doc. 19, p. 3.)  Judge Hall stated that

"Plaintiff's newly-asserted allegations regarding his grievance efforts appear specious.

However, at the frivolity review stage, the Court does not test the credibility of Plaintiff's

exhaustion allegations."[2]  Id.  Accordingly, the Court did not dismiss Plaintiff's Complaint for

failure to exhaust at that time.  Id.  Rather, Judge Hall went on to assess the merits of Plaintiff's

claims.  The Court dismissed the majority of those claims but ordered that Plaintiff's excessive

force claims against Defendant Allen would proceed.

Following service, Defendant Allen filed the instant Motion to Dismiss Plaintiff's

Complaint.  (Doc. 21.)  That Motion once again brought the Court's attention to the issue of

whether Plaintiff exhausted his administrative remedies.  Id.  Defendant argued that Plaintiff did

not complete exhaustion through his alleged August 1, 2015, grievance or through his alleged

grievances of October 1, 2015, and November 2, 2015.  In support of his arguments, Defendant

offered affidavits from Jacquelyn Ayeni, the Grievance Coordinator at GSP, (doc. 21-2), and

Russell Houser, a counselor at GSP, (doc. 21-4).

---

[2]  Judge Hall went on to note that "should Defendant Allen file a Motion challenging Plaintiff's
exhaustion efforts, Plaintiff's allegations will not be given such deference." (Doc. 19, p. 3 n.1.)  Rather,
Judge Hall explained that the Court would subject Plaintiff's contentions to the "two-step process" of
Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008).  Id.

In his response to Defendant's Motion to Dismiss, Plaintiff provided yet another version of events regarding his efforts at exhausting his administrative remedies. (Doc. 25.) Plaintiff contends that he gave Counselor Houser a grievance regarding Officer Allen's use of force in August of 2015, and Houser told Plaintiff that he turned it in to the Grievance Coordinator. Id. He also claims that his grievance "was held in the system for 10–11 months which blocked [Plaintiff] from making any grievances from April and May 2015 until March 4, 2016." Id. He alleges that, with two previous grievances "in the system", he could not turn in another grievance. He goes on to levy the conclusory allegation that Defendant and Grievance Coordinator Ayeni are lying.

## DISCUSSION

### I. Dismissal for Plaintiff's Failure to Exhaust his Available Administrative Remedies Before Filing Suit

#### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the

court.  Id.  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079, the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.  First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.  541 F.3d at 1082.  If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

**B.      Legal Requirements for Exhaustion**

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).  Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  In Porter, the United States Supreme Court held that exhaustion of available

5

administrative remedies is mandatory.  534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper."  Id. at 92.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at1378 ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir.

2005)); <u>Sewell v. Ramsey</u>, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. <u>Johnson</u>, 418 F.3d at 1157–59; <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." <u>Smith v. Terry</u>, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" <u>Id.</u> (quoting <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. <u>Hooks v. Rich</u>, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" <u>Id.</u> (quoting <u>Irvin v. Zamora</u>, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. <u>Id.</u>

Nonetheless, the United States Supreme Court recently held that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

circumstances.'   And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1857 (June 6, 2016).

### C.      The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001.  (Doc. 21-3.)  This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance.  (Id. at p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally."  Id.  Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender.  (Id. at p. 4.)  An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8 (emphasis in original).)  A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday."  (Id. at p. 2.)  The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor.  (Id. at pp. 7–8.)  The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator.  (Id. at p. 8.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it.  (Id.)  The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond.  An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired.  (Id. at pp. 10–11.)  An inmate can

file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

### D.    Assessment of Plaintiff's Exhaustion

#### 1.    Whether Plaintiff Properly Exhausted GSP's Administrative Remedies

In his Complaint, Plaintiff stated that he filed a grievance on October 1, 2015, and "nothing has been done yet." (Doc. 1, p. 3.) In his Amended Complaint, Plaintiff stated that he had written a grievance and "the grievance counselor and the Warden[,] Mr. Stanley[,] has [sic] refused to reply to my grievance." (Doc. 8, p. 3.) Plaintiff attached to his Amended Complaint a receipt whereby the grievance counselor acknowledged receiving Plaintiff's grievance on November 2, 2015. (Id. at p. 9.) As Plaintiff now apparently concedes, these efforts in October and November of 2015 cannot constitute proper exhaustion. As an initial matter, Plaintiff knew, or should have known, of the facts giving rise to his claims against Defendant on July 30, 2015, the date of the use of force. Thus, a grievance on October 1, 2015, would have been well outside the ten-day window for Plaintiff to file an initial grievance. (Doc. 21-3, p. 8.) Moreover, the forty-day time period for the warden to respond to Plaintiff's grievance had not run when he signed his Complaint on October 3, 2015. (Doc. 1, p. 8.)

Apparently recognizing these deficiencies, Plaintiff now argues that he filed a grievance with Counselor Houser in August of 2015. In his Response to the Motion to Dismiss, Plaintiff contends he gave Houser a grievance regarding Officer Allen's use of force in August of 2015, and Houser told Plaintiff that he turned it in to the Grievance Coordinator. (Doc. 25.) In his

Objections to the Motion to Dismiss, Plaintiff alleged that he attempted to write a grievance on August 1, 2015, but that Houser did not show up for work until September. (Doc. 18, p. 1.) He claimed that the grievance was "in the system", but that he never received a response from the Warden. Id.

Even under the first Turner step, Plaintiff's inconsistent account of his August 2015 grievance fails to constitute proper exhaustion. If Plaintiff filed this grievance on August 1, 2015, as Plaintiff alleges, the Warden had forty days to respond to that grievance. (Doc. 21-3, pp. 10–11.) If the Warden failed to respond, Plaintiff could not simply rely upon that lack of response to constitute exhaustion. Rather, Plaintiff still had to complete each step of the grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson, 418 F.3d at 1157; Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies). Thus, if the Warden failed to respond within forty days of Plaintiff filing the grievance, Plaintiff's next step would be to file an appeal with the Commissioner's Office within ten days. (Doc. 25-1, p. 12.) However Plaintiff does not allege that he ever filed an appeal. Moreover, even if he did file an appeal, the Commissioner would have had 100 calendar days after receipt of that appeal to render a decision. Id. That time period would not have expired by the time Plaintiff signed his Complaint on October 3, 2015.

Plaintiff's attempt to rely upon a grievance allegedly filed in August of 2015 withers even more easily when subjected to the crucible of examination required by the second Turner step. The variability in Plaintiff's account of his August 2015 grievance belies the credibility of that

account. In his Complaint, when explaining the steps he took to grieve his claims, Plaintiff never mentioned an August 2015 grievance. (Doc. 1, p. 3.) He only stated he wrote an August grievance in his Objections after the Report and Recommendation raised the issue of exhaustion. (Doc. 18, p. 1.) Moreover, his accounts of the grievance in his Objections and his Response to the Motion to Dismiss are inconsistent.

In contrast, Defendants offer more credible information indicating that Plaintiff never filed a grievance in August of 2015. Ayeni, the Grievance Coordinator at GSP, explains that the prison keeps records of every grievance filed by an inmate, and those records do not reflect that Plaintiff filed a grievance in August of 2015. (Doc. 21-2.) She further explains that, had Plaintiff given Houser a grievance, Houser would have been required to provide Plaintiff with a grievance receipt and to provide the grievance to Ayeni. (Id. at p. 8.) She also states that she has never been aware of Houser failing to forward her a grievance. Id.

Houser avers that he was the counselor in Plaintiff's building (the K-Building) from January 2, 2015, to October 16, 2015. (Doc. 21-4, p. 2.) Houser states that, had Plaintiff given him a grievance in August of 2015, he would have provided Plaintiff a receipt for the grievance and given the grievance to Ayeni on the same date that Plaintiff gave Houser the grievance. (Id. at p. 3.) In his Objections, Plaintiff argued that Houser did not turn in the grievance because Houser was absent from work throughout August of 2015.[3] However, Houser explains that, throughout August and September of 2015, he worked ten hours a day Monday through Thursday in the K-Building with the exceptions of August 10 and 27, and September 8 and 23–25. (Id. at p. 4.) Houser specifically explains that he worked in the K-Building for ten hours a day from July 27, 2015, through July 30, 2015, and August 3, 2015, through August 6, 2015.

---

[3] It is not clear if Plaintiff still stands by this version of events, as he appears to represent in his Response to the Motion to Dismiss that Houser accepted the grievance in August but just refused to turn it in.

(Id. at p. 4.)  The date that Plaintiff claims he gave the grievance to Houser, August 1, 2015, was a Sunday, and, therefore, Houser was not a work.  Id.  Moreover, Ayeni explains that, under SOP IIB05-0001, Plaintiff could have turned in his grievance to "any counselor."  (Doc. 21-2, pp. 8–9.)  Even though Houser was the counselor in the K-Building, numerous other counselors come into that building every day.  Id.  Thus, even if Houser had been absent, that would not have prevented Plaintiff from filing a grievance in August of 2015.

In short, even under Plaintiff's version of events and accepting that he filed an initial grievance in August of 2015, he failed to exhaust his administrative remedies through that grievance before filing this lawsuit.  Moreover, Defendant has presented far more credible facts revealing that Plaintiff did not file a grievance in August of 2015.  Consequently, Plaintiff did not properly exhaust GSP's administrative remedies before filing this suit.

> 2.  Whether GSP's Administrative Remedies Were Unavailable to Plaintiff at the Time he Filed Suit

Having found that Plaintiff failed to exhaust GSP's administrative remedies, the Court must assess whether those remedies were available to Plaintiff.  Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him.  ___ U.S. ___, 136 S. Ct. at 1859–60 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.")  The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Id.  First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.  Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy.  Id.  Second, when

12

administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id. (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

Though his Response to the Motion to Dismiss is unclear, Plaintiff arguably contends that the administrative remedies officially on the books at GSP were not made available to him. Plaintiff stated that his grievance was "in the system for 10–11 months which blocked me from making any grievances from April and May of 2015 until March 4, 2016[,] when Warden Williams signed grievance[s] which blocked the grievance I gave Counselor Houser." (Doc. 25, p. 1.) Construing Plaintiff's arguments liberally, he appears to argue that he could not use the grievance system because he already had two grievances pending. SOP IIB05-0001 provides that an inmate may only have two active grievances pending at one time. (Doc. 21-3, pp. 7–8.) If an inmate has more than two active grievances, the procedure states that the inmate must drop one of the outstanding active grievances being processed in order to file a new grievance. Id. There are three exceptions to the two active grievance limit if the grievance: (1) is filed as an emergency grievance and is determined to be an emergency grievance by the Grievance Coordinator; (2) involves allegations of physical abuse with significant injury to the inmate or sexual assault; or (3) involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person. Id.

Several courts have found that similar restrictions on the number of grievances an inmate may file do not excuse an inmate from exhausting the grievance procedure before filing suit. Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009) (being on grievance restriction did not prevent inmate from exhausting his remedies); Eckard v. Glebe, No. C14-5898 RJB-KLS, 2015 WL 6507233, at *8 (W.D. Wash. Oct. 5, 2015), *report and recommendation adopted*, No. C14-5898 RJB-KLS, 2015 WL 6507519 (W.D. Wash. Oct. 27, 2015) (Because plaintiff did not abide by the limitations prison places on the number of grievances that an offender may have active at any one time, he did not properly exhaust his claim); West v. Endicott, No. 06–C–763, 2008 WL 90622, at *8 (E.D. Wis. Mar. 31, 2008) (prison's limit on number of grievances "does not prohibit the filing of any complaints so much as it requires the inmate to prioritize his claims . . . [t]he rule is not, in other words, an excuse for failure to exhaust."); Howard v. Smith, No. CV606-062, 2008 WL 816685, at *5 (S.D. Ga. Feb. 28, 2008), *report and recommendation adopted in pertinent part, rejected in part*, No. CV606-062, 2008 WL 816684 (S.D. Ga. Mar. 26, 2008) (rejecting inmate plaintiff's argument that he could not exhaust grievance procedure due to of former SOP IIB05-0001's limit on grievances and noting that "inmates are given the opportunity to prioritize their grievances by dismissing a pending grievance to allow the resolution of another grievance."); Ciarpaglini v. Gorske, 07-C-461-S, 2007 WL 5614117 (W.D. Wis. Oct. 4, 2007) (dismissing prisoner lawsuit for exceeding limit on number of grievances).

The reasoning behind these decisions applies with equal force in the case at hand. SOP IIB05-0001's grievance limit did not make GSP's grievance process unavailable to Plaintiff. Rather, because Plaintiff alleged that Defendant Allen abused him physically and caused him significant injury, his grievance would have fallen within an exception to the grievance limit. Moreover, even if his grievance would not have fallen within the exception, Plaintiff could have

14

dropped one of his other grievances or he could have asked for the grievance to be considered because it involved an important issue of prison security or administration. Plaintiff could not simply disregard the grievance process and then argue, after the fact, that if he had filed a grievance, it would have been rejected. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile.").

Even assuming all of Plaintiff's allegations are true under the first Turner step, he fails to establish that the administrative remedies at GSP were not capable of use. Again, an inmate must comply with the institution's procedural rules in order to effectuate proper exhaustion. Jones, 549 U.S. at 218; Woodford, 541 U.S. at 90–92. It is not this Court's place to second guess a prison's grievance rules, and an inmate cannot create unavailability by failing to abide by those rules. Additionally, while Plaintiff complains that Counselor Houser was not in Plaintiff's housing unit after the incident, he was not required to wait on Counselor Houser to submit his grievance. Rather, the prison's policy explicitly provided that Plaintiff could "give it to any counselor." (Doc. 21-3, p. 8.)

In sum, under the first Turner step, Plaintiff does not establish that GSP officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GSP grievance process was so complicated that it was "essentially unknowable," or that GSP officers "thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, ___ U.S. ___, 136 S. Ct. at 1859–60. Thus, even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court contemplated in Ross.

Plaintiff's claims of unavailability fail even more easily under the second Turner step. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d at 1083. Having reviewed all of Plaintiff's and Defendant's filings, the Court finds Grievance Coordinator Ayeni's and Counselor Houser's accounts of availability more credible than Plaintiff's.

Counselor Houser states that, from January 2, 2015, to October 16, 2015, he worked as the counselor in the K-Building at GSP and that Plaintiff was housed in that building. (Doc. 21-4, p. 2.) As laid out above, Houser specifically states that he worked ten hours a day and four days a week throughout August and September of 2015 with a few exceptions. (Doc. 21-4, pp. 4–5.) According to Houser, Plaintiff could have obtained a grievance form from Houser, and Houser would have forwarded the grievance to the Grievance Coordinator on the same date that Plaintiff gave it to him and then given Plaintiff a receipt for his grievance. Id. Thus, Houser was regularly available to Plaintiff to receive and file any grievance that Plaintiff wished to file. Id.

Ayeni, the Grievance Coordinator, states that upon admission to GDOC, prison officials provide an orientation to inmates on the grievance process, and the process is outlined in the inmates' Orientation Handbook. (Doc. 21-2, p. 3.) Additionally, inmates may review SOP IIB05-0001 in the prison's library. Ayeni states that grievance forms are available in all living units in the prison and in the counselors' office during business hours. (Id. at p. 4.) Ayeni avers the she has never been aware of Houser failing to forward a grievance to her as required by SOP IIB05-0001. Ayeni also explains that, though Houser was the counselor in the K-Building, "numerous other counselors came into the K-Building every day," and Plaintiff could have submitted his grievance to one of those counselors. (Id. at pp. 8–9.)

Houser's and Ayeni's accounts of availability are consistent with the record evidence, including the prison's Standard Operating Procedures. In contrast to Houser's account, Plaintiff's account of the grievance availability at GSP contains inconsistencies. Accordingly, the Court should find that GSP's grievance process was available for Plaintiff to grieve Defendant's use of force against him. See Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure.")

In sum, Plaintiff filed this lawsuit without properly submitting his claims against Defendant to the prison's grievance system first. An inmate must do more to resolve his dispute within the literal walls of the prison or at least the figurative walls of the prison system before seeking relief in the halls of the courthouse. Consequently, the Court should **GRANT** Defendant's Motion and **DISMISS** Plaintiff's Complaint.

## III.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis.*[4] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be

---

[4] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss and Plaintiff's putative claims against Houser, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss, (doc. 21), **DISMISS** Plaintiff's Complaint, **without prejudice**, based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 16th day of September, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA